**ELLIS GEORGE LLP**
Nicholas S. Pradaxay
Edward T. Hagan
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629

**ELLIS GEORGE LLP**
Keith J. Wesley (*Pro hac vice* forthcoming)
Lori Sambol Brody (*Pro hac vice* forthcoming)
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

*Attorneys for Plaintiffs Bastiat USA, Inc.*
*and Y.Y.G.M. SA*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BASTIAT USA, INC. and Y.Y.G.M. SA,<br><br>               Plaintiffs,<br><br>    v.<br><br>PDD HOLDINGS INC. d/b/a TEMU,<br>WHALECO INC. d/b/a TEMU, and DOES 1-10,<br><br>               Defendants. | Civil Action No. 25-cv-13592 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Bastiat USA, Inc. and Y.Y.G.M. SA, as and for their complaint against

defendants PDD Holdings Inc. and Whaleco Inc. (both d/b/a Temu) and Does 1-10, allege as

follows:

**LOCAL CIVIL RULE 10.1 ALLEGATIONS**

1.      The address of the principal places of business for the parties are as follows:

Plaintiff Bastiat USA, Inc.: 120 S. Wood Ave Suite 407, Iselin, NJ 08830.

Plaintiff Y.Y.G.M. SA: Via Giuseppe Motta 44, 6900 Lugano, Switzerland.

Defendant PDD Holdings Inc. d/b/a Temu: 25 St. Stephen's Green 1st Floor, Dublin 2, DO2 XF99, Ireland.

Defendant Whaleco Inc. d/b/a Temu: 31 Saint James Ave., Suite 355, Boston, MA 02116.

## **INTRODUCTION**

2.      Defendants are the owner-operators of Temu, a giant e-commerce website and application that bills itself as a marketplace for sellers to supply product.  Temu is a fairly new entrant into the United States' "ultra fast fashion" market.  As opposed to "fast fashion," which focuses on mass production, the "ultra fast fashion" market relies on a highly tech-enabled supply chain that includes a limited pool of independent clothing makers that create and deliver products on demand, at a razor-thin margin.   Temu's tag-line is "Shop Like a Billionaire" – meaning that Temu's low prices allow customers to buy many products without breaking the bank.  In other words, Temu's focus is to supply product to customers as quickly and cheaply as possible.

3.      Although Temu calls itself an e-commerce marketplace and claims that it does not sell product itself and only provides a platform for sellers, Temu's actual business practices show differently:  Temu exerts control over its so-called independent sellers as to almost every aspect of its marketplace.  Temu handles payment processing and shipping for the sellers.  Temu also promotes products for its sellers through its website, application, and on social media.

4.      In a lawsuit brought by another e-commerce giant, Temu's main competitor, Shein, Shein alleged:

Temu masquerades as a legitimate e-commerce "marketplace" where independent

sellers can offer their products for sale.  But the facts uncovered to date – and

those expected to be uncovered in discovery – demonstrate otherwise.  Temu is

not actually a "marketplace" platform.  It controls every aspect of its sellers

activity.  It directs what products they can list and the prices for which they can

sell; encourages them to infringe the intellectual property rights of others; and

even prevents them from removing their products from Temu's website after they

have admitted to infringement.[1]

5.      Temu's entrance into the "ultra fast fashion" market has been characterized as

"meteoric."  But this rise of Temu and model of business is only possible by Temu's exploitation

of others' intellectual property rights and has come at the expense of designers and other

business owners, such as Brandy Melville, who have found near-identical versions of their

product designs being sold on Temu at those much lower prices.  As one lawyer told *Time*

*Magazine*, "When Temu started getting a lot bigger in 2022, immediately, clients were getting

ripped off . . . And it's just been getting worse and worse."[2]

6.      Brandy Melville is one of the most coveted authentic brands worldwide in the

young women's fashion and lifestyle categories.  Unlike Temu, Brandy Melville markets and

sells interesting and innovative original product designs via unique, recognizable branding.

7.      In light of Brandy Melville's worldwide popularity, Temu went to extraordinary

measures to trade off Brandy Melville's goodwill with its customers.  Temu.  Its website is

---

[1]      *Roadget Bus. Pte. Ltd. v. PDD Holdings Inc., et al.*, U.S.D.C. D.C. Case No. 24-cv-02402, Dkt. No. 1; https://s3.documentcloud.org/documents/25052072/shein_temu.pdf

[2]      https://time.com/6342387/temu-copy-work/

configured so that a search for "Brandy Melville" or Brandy Melville's most notable trademarks such as "CHILL SINCE" leads directly to infringing and counterfeit Brandy Melville goods.

8.      Temu has also used or permitted the use of the exact same photograph from the Brandy Melville website.  In other words, when a customer saw an original Brandy Melville product and photograph on the Temu website and placed an order, the customer did not receive the authentic Brandy Melville good depicted.  Instead, the customer received a cheaper, lower-quality Temu knockoff – i.e., a bait-and-switch.

9.      Below are examples of the products subject to Plaintiffs' copyright and trademarks from the Brandy Melville website and the substantially identical versions of the products from Temu's website.

**<u>Brandy Melville</u>**         **<u>Temu</u>**

**Brandy Melville**                    **Temu**

 

 

| **Brandy Melville** | **Temu** |
| --- | --- |
|  |  |

## PARTIES

10.    Plaintiff Bastiat USA, Inc. ("Bastiat") is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in New Jersey.  Bastiat is the assignee of the copyright at issue herein.  Use of the intellectual property in question inures to the benefit of Bastiat.

11.    Plaintiff Y.Y.G.M. SA ("YYGM") is a Swiss corporation with its principal place of business in Lugano, Switzerland.  YYGM is the owner of the trademarks at issue herein and licenses that intellectual property to U.S.-based entities for use in the United States.  Use of the intellectual property in question by the U.S.-based entities inures to the benefit of YYGM.

12.    Together, Bastiat and YYGM are referred to as "Plaintiffs."

13.    Plaintiffs are informed and believe, and on that basis allege, that defendant PDD Holdings Inc. ("PDD") is a Cayman Islands corporation with its principal place of business in Dublin, Ireland.  PDD is a publicly traded company listed on NASDAQ.  Plaintiffs are informed and believe, and on that basis allege, that PDD directs and controls the operation of the

temu.com website (the "Website") and the Temu application (the "App").  Indeed, PDD's

Annual Report for the year ending December 31, 2024, says that it conducts its operations

through its subsidiaries, the Website, and the App.  2024 Annual Report at 5; *see also id.* at 24

(referencing that "we as the operator of the e-commerce platforms"); *id.* at 26 ("Consumers

primarily access our services through the . . . Temu mobile apps"); *id.* at 28 ("we launched

Temu, a global online platform"); *id.* at 46 ("we are still in the early stages of operating the

Temu platform.").[3]  The Website and the App consist of an e-commerce platform that is

purposefully directed and targeted to the United States, and to New Jersey specifically, by

marketing and selling goods, including the goods in this case, to customers in the United States

and New Jersey.

       14.     Plaintiffs are informed and believe, and on that basis allege, that defendant

Whaleco Inc. (d/b/a Temu) ("Whaleco") is a Delaware corporation with its principal place of

business in Boston, Massachusetts, is registered to do business in New Jersey, and does business

within the State of New Jersey.  Whaleco is a wholly owned subsidiary of PDD.  Plaintiffs are

informed and believe, and on that basis allege, that Whaleco is the owner and operator of the

Website and the App under the direction and control of PDD.  Whaleco conducts substantial

business in the State of New Jersey and throughout the United States.

       15.     Collectively, PDD and Whaleco are referred to as "Temu."

       16.     Plaintiffs are unaware of the true names and capacities of defendants named

herein as Does 1 through 10, inclusive, but is informed and believes, and on that basis alleges,

that each of the fictitiously named defendants engaged in, or is in some manner responsible for,

the wrongful conduct alleged herein.  Plaintiffs therefore sues these defendants by such fictitious

---

[3]     https://investor.pddholdings.com/financial-information/annual-reports

names and will amend this complaint to state their true names and capacities when such names have been discovered.  Temu and the Does are collectively referred to as "Defendants."

## JURISDICTION AND VENUE

17.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1338 because the action arises under the federal Copyright Act and Lanham Act.  *See* 17 U.S.C. §§ 101, *et seq.*; 15 U.S.C. §§ 1051, *et seq.*  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. sections 1367 and 1338(b).

18.    Venue in this district is proper under 28 U.S.C. section 1391 because Temu is subject to personal jurisdiction here and Plaintiffs have suffered injury here.

19.    This Court has personal jurisdiction over Temu.  Temu regularly purposefully directs and targets its activities to the United States, and to New Jersey specifically, by marketing and selling goods, including the goods in this case, to customers in the United States and New Jersey, through its Website and its App which are available on the App Store and on Google Play.

## GENERAL ALLEGATIONS

**A.     The Brandy Melville Brand Is One of the Most Popular Girls and Women's Fashion and Lifestyle Brand in the World**

20.    The Brandy Melville brand (the "Brand" or "Brandy Melville") is one of the most popular worldwide fashion and lifestyle brands for girls and young women.  Founded in Europe over 30 years ago, the Brand, via its U.S.-based licensees, established a retail presence in Los Angeles starting in 2009 and has since expanded across the United States.  Although Brandy Melville markets and sells to consumers of all ages, it has developed a particularly strong following amongst girls and women in the 15- to 25-year-old age range.

21.    The Brand is marketed and sold online, as well as in more than a dozens of retail stores in the United States and internationally.

22.    Tens of millions of consumers, if not more, have shopped at one or more of the United States-based retail stores or the on-line store selling Brandy Melville's merchandise in the U.S., https://us.brandymelville.com/ (the "On-Line Store").

23.    The Brand is regularly featured in leading national fashion and lifestyle print publications such as *Cosmopolitan*, *Elle*, *Vogue*, and *Seventeen*, and general print publications such as the *Los Angeles Times*, the *Village Voice*, the *Boston Globe*, and independent and college newspapers.  It is also regularly featured on television and on third-party websites, blogs, and TikToks.

24.    The Brand promotes itself online, including on the On-Line Store, https://us.brandymelville.com/, and on social media, including Twitter, Instagram, and TikTok. The Brand's Instagram page has over 3 million followers and the Brand's TikTok account has over 123,000 followers.

**B.    Plaintiffs Own Valuable Intellectual Property Related to the Brandy Melville Brand**

25.    The Brand's designs are valuable intellectual property.  To help protect its intellectual property, the Brand – via the owner of its intellectual property and/or one or more of its licensees – has sought to obtain and/or obtained copyright and trademark registrations with the United States Copyright Office and the United States Patent and Trademark Office ("USPTO").

26.    Bastiat – which provides management services for the many U.S. licensees of the Brand – has been assigned the copyright at issue in this action (along with all claims for infringement thereof) and used in connection with the Brand's fashion accessories.

27.    This is the "Eye" fabric design (aka V270A) (the "Eye Fabric Design" or the "Copyright"), Copyright Registration No. VA 2-384-496, registered with the Copyright Office effective December 18, 2023.  A copy of this copyright registration is attached hereto as Exhibit 1 and incorporated herein by this reference.

28.    The copyrighted Eye Fabric Design has been used on multiple Brandy Melville products such as boy short style underwear and tank tops that are sold, *inter alia*, on the Brandy Melville On-line store.  The Eye Fabric Design is depicted below:



29.    They Eye Fabric Design as used on Brandy Melville's boy short style underwear is depicted below:



30.     YYGM is the owner of the trademarks at issue in this action and used in connection with the Brand's fashion accessories.

31.     YYGM is the owner of USPTO Registration No. 5238856 for the trademark "BRANDY [heart] MELVILLE" in Class 25 in the apparel category.  This trademark is depicted below:

Brandy ♥ Melville

32.     YYGM is also the assignee of USPTO Registration No. 6087949 for the trademark "CHILL SINCE" in Class 25 in the apparel category.

33.     Lastly, YYGM is the owner of USPTO Registration No. 7385627 for the trademark "RADIO SILENCE" in Class 25 in the apparel category.

34.    The three trademarks above are collectively referred to as the "Trademarks."

35.    Brandy Melville's fashion designs using the Copyright and the Trademarks are unique, original designs that consumers recognize as originating from Brandy Melville.

36.    The Brand promotes and markets its unique and original products using photographs on the On-Line Store and/or on social media.  The photographs above show the Brand's iconic designs.

37.    For more than 15 years, Brandy Melville branded merchandise has been, and continues to be, extensively advertised and sold throughout the United States.  As a result of the Brand's sales and advertising, in the minds of consumers, Plaintiffs' copyrights, trademarks, and unique designs have come to symbolize Brandy Melville.  These intellectual property rights have thus become valuable assets.

C.    **Temu Infringes Upon Bastiat's Intellectual Property Rights**

38.    Founded in 2022 in Boston, Temu announced itself to American consumers via a 2023 Super Bowl commercial, representing that its website would let customers "shop like a billionaire" – but with low prices.[4]

39.    Temu, however, does not sell products directly to consumers.  Instead, it purportedly has a hosting model similar to Amazon, where it provides a host platform, on its Website and its App, for third party businesses.  Its App is one of the most popular applications, consistently at the top of the App Store charts, and is mostly used by young women.[5]

40.    On the Website, Temu describes itself as an "e-commerce company that connects consumers with millions of merchandise partners, manufacturers and brands with the mission to

---

[4]    https://www.investors.com/news/technology/amazon-stock-amzn-temu-pdd-ecommerce/

[5]    https://time.com/6342387/temu-copy-work/ ; https://www.chinatalk.nl/the-current-state-of-temu/

empower them to live a better life.  Temu is committed to bringing affordable products onto its platform to enable consumers and merchandise partners to fulfill their dreams in an inclusive environment."[6]  Temu represents that it "bring[s] a sophisticated network of merchandise partners, manufacturers, and brands of all sizes to your doorstops."[7]

41.    But Temu is much more than a mere hosting platform.  Temu facilitates the marketing, advertising, processing, and shipping of the sellers' products and offers significant incentives and services to those business which sell on Temu's platform.  Temu touts to potential sellers that its "global popularity and influence" allows sellers to market products to potential customers and has a team of specialists to "provide[] the guidance you need every step of the way."[8]

42.    Temu not only provides the sellers with a host and a large customer base but also provides transaction services – it handles payment processing and shipping.[9]  Temu also promotes products for its sellers through its App, Website, and social media.[10]  It seeks to help sellers develop their marketing – sellers on Temu have access to Temu's seller support system, such as forums, webinars, and tutorials to increase sales and optimize their listings.[11]

---

[6]      https://www.temu.com/about-temu.html?refer_page_name=home&refer_page_id=10005_1745355287605_nsi8aqh8o3&refer_page_sn=10005&_x_sessn_id=gkws0eki2p

[7]      *Id.*

[8]
         https://seller.temu.com/login.html?login_scene=201&shop_region=211&shop_site=100&_x_sessn_id=gkws0eki2p&refer_page_name=partner-with-temu&refer_page_id=10027_1745358762843_ydt7lcgipv&refer_page_sn=10027

[9]      https://sellerchamp.com/blog/how-to-sell-on-temu/

[10]     *Id.*

[11]     https://www.smartscout.com/amazon-selling-guides/is-selling-on-temu-worth-it

43.    Temu, of course, does not do this for free but charges sellers a fee for each sale made through its platform.

44.    In fact, Plaintiffs are informed and believe, and on that basis allege, that Temu exerts control over its sellers as to every aspect of its marketplace, including what products can be listed, the prices for the products, and encourages sellers to infringe the intellectual property rights of others.

45.    Plaintiffs are informed and believe, and on that basis allege, that Temu is also advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from counterfeit Brandy Melville products, whether from its own sale of counterfeit products or from the sale of third party sellers of counterfeit Brandy Melville products.  Indeed, Temu has gone so far as to use, or permit others to use, the identical photographs that appear on Brandy Meville's On-Line Store.

46.    On information and belief, Defendants have advertised, manufactured and/or distributed the infringing products to consumers.  On information and belief, the infringing products are marketed and sold at prices below those charged for Brandy Melville products.

47.    Plaintiffs are also informed and believe, and on that basis alleges, that Defendants were at all times aware that their products resemble the Brand's products so closely that consumers are likely to be, and in fact have been, confused as to the source of the infringing products.  Plaintiffs are informed and believe, and on that basis allege, that this resemblance is precisely the reason why Defendants market and sell the infringing products.

48.    Plaintiffs are informed and believe, and thereon allege, that Defendants have received a direct financial benefit from marketing and selling the products incorporating Plaintiffs' Copyrights, Trademarks, and designs, in an amount that is unknown to Plaintiffs.

49.     Plaintiffs are informed and believe, and thereon allege, that Defendants' marketing, sale, and distribution of the infringing products and use of Plaintiffs' Copyrights and Trademarks have caused the Brand to lose sales and profits.

50.     Defendants' acts have caused, and will continue to cause, irreparable harm and injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.  Accordingly, Defendants should be enjoined and restrained from directly or indirectly manufacturing, distributing, importing, exporting, advertising, offering for sale, or selling any product that copies Plaintiffs' intellectual property.  Plaintiffs are therefore entitled to a preliminary and permanent injunction against Defendants' continuing acts of infringement.  Plaintiffs are further entitled to an order impounding and destroying all infringing product in Defendants' possession, custody or control.

## FIRST CLAIM FOR RELIEF
### (YYGM Against Defendants for
### Trademark Infringement and Counterfeiting)

51.     YYGM re-alleges and incorporate herein by reference each and every allegation set forth above.

52.     YYGM is the owner of the registered Trademarks.

53.     The Trademarks are valid, protectable marks.

54.     Defendants are advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from products incorporating the Trademarks or nearly identical variations thereof.

55.     Defendants' use of the Trademarks is likely to cause confusion among ordinary purchasers as to the source of the goods.

56.     YYGM has never consented to Defendants' use of its Trademarks.

57.    Defendants infringed upon the Trademarks and engaged in trademark counterfeiting willfully.

58.    As a proximate result of the unfair advantage accruing to Defendants from using confusingly similar marks and deceptively trading on YYGM's goodwill, Defendants have made substantial sales and profits in amounts to be established according to proof.

59.    As a proximate result of the unfair advantage accruing to Defendants from using similar or quasi-similar marks and deceptively trading on YYGM's goodwill, YYGM has been damaged and deprived of substantial sales and has been deprived of the value of its trademarks as commercial assets, in amounts to be established according to proof.

60.    Unless restrained by the Court, Defendants will continue to infringe the Trademarks.  Pecuniary compensation will not afford YYGM adequate relief for the damage to its trademarks and brand.  In the absence of injunctive relief, consumers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Defendants and their purported goods.

61.    Defendants' acts were committed, and continue to be committed, with actual notice of YYGM's exclusive rights and with the intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with YYGM and its products.  Pursuant to 15 U.S.C. § 1117, YYGM is, therefore, entitled to recover three times its actual damages or three times Defendants' profits, whichever is greater, together with its attorneys' fees.  YYGM is also entitled to statutory damages of $2 million per registered mark. In addition, pursuant to 15 U.S.C. § 1118, YYGM is entitled to an order requiring destruction of all infringing products and promotional materials in Defendants' possession.

## SECOND CLAIM FOR RELIEF
### (Bastiat Against Defendants for
### Copyright Infringement)

62.    Bastiat re-alleges and incorporates herein by reference each and every allegation set forth above.

63.    Bastiat has complied in all respects with the copyright laws of the United States, 17 U.S.C. § 101 et seq., and has secured the exclusive rights and privileges in and to the Copyright.

64.    Defendants had access to Bastiat's Copyright, as established by, among other things, the widespread availability of pictures of the Brand's products incorporating the copyrighted Eye Fabric Design on the Brand's On-Line Store, the fact that Brandy Melville's products are well known in the industry and in the public, the fact that Brandy Melville's products are sold in thousands of retail stores throughout the country, and the fact that Defendants' infringing products are strikingly similar in design to Bastiat's Copyright.

65.    Defendants infringed the Copyright by incorporating, or permitting others to incorporate, a substantially similar design into its products, which are also substantially similar to the Brand's product designs, which are marketed and sold to consumers and/or retailers, without Bastiat's permission.

66.    Defendants infringed the Copyright willfully.

67.    Bastiat is entitled to actual damages and Defendants' profits, whichever is higher, but in an amount no less than $1 million.

68.    Defendants' acts have caused and will continue to cause irreparable harm to Bastiat unless restrained by this Court.  Bastiat has no adequate remedy at law.  Accordingly, Bastiat is entitled to an order enjoining and restraining Defendants, during the pendency of this

action and permanently thereafter, from manufacturing, distributing, importing, exporting, marketing, offering for sale or selling the infringing products.

## THIRD CLAIM FOR RELIEF
### (Plaintiffs Against Defendants for
### False Designation of Origin (15 U.S.C. § 1125(a))

69.    Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

70.    Defendants falsely designated the origin of the designs, in violation of 15 U.S.C. § 1125(a), by incorporating, or permitting others to incorporate, images of fashion designs using Plaintiffs' Copyright and Trademarks on their website and App in order to advertise and solicit sales of the designs.

71.    By using these pictures on the website and App, or by permitting others to use the pictures, Defendants falsely represented that Brandy Melville's authentic designs were Defendants' own and that a customer who placed an order for the good being depicted would receive the item being depicted.  Indeed, Defendants even used, or permitted others to use, at least one identical photograph Brandy Melville uses on its On-Line Store to advertise its designs.

72.    Brandy Melville's authentic fashion designs depicted on the website and APP were different from, and superior to, the goods Defendants were prepared to deliver, and did actually deliver, to consumers.

73.    Plaintiffs are informed and believe, and thereon allege, that Defendants' misuse of pictures of images of fashion designs using Plaintiffs' Copyright and Trademarks – including the use of the identical photographs used on the Brand's On-Line Store – was intended to deceive and did in fact deceive consumers who viewed Defendants' Website and App and/or purchased Defendants' products.

74.     Plaintiffs are informed and believe, and thereon allege, that Defendants' false designation of origin has harmed Brandy Melville, including by diluting the Brand, harming the Brand's reputation, and causing the Brand to lose sales and customers.

75.     Plaintiffs are informed and believe, and thereon allege, that Defendants' false designation of origin resulted in Defendants being unjustly enriched, including through sales of the designs, as well as through sales of Defendants' other products being promoted alongside pictures of authentic Brandy Melville products.

76.     Plaintiffs are informed and believe, and thereon allege, that Defendants' acts were committed with actual notice of Plaintiffs' (and/or their assignors') exclusive rights and with an intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Brandy Melville and its products.  Pursuant to 15 U.S.C. § 1117, Plaintiffs are therefore entitled to recover three times their actual damages or three times Defendants' profits, whichever is greater, together with Plaintiffs' attorneys' fees.  In addition, pursuant to 15 U.S.C. § 1118, Plaintiffs are entitled to an order requiring the destruction of all infringing products and promotional materials in Defendants' possession.

**FOURTH CLAIM FOR RELIEF**
**(Plaintiffs Against Defendants**
**for Common Law Unfair Competition)**

77.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth above.

78.     Brandy Melville and Defendants are business competitors.

79.     By using, or permitting others to use, images of fashion designs using Plaintiffs' Copyright and Trademarks on their website and App in order to advertise and solicit sales of the designs – including the use of the identical photographs used on the Brand's On-Line Store –

which was likely to cause consumer confusion, Defendants committed unfair competition under the common law of New Jersey.

80.    Defendants' acts alleged herein have caused Plaintiffs to lose profits and caused additional damage to the reputation and goodwill of the Brand.  The precise amount of Plaintiffs' damages is presently unknown but will be established according to proof and is in excess of $1 million.

81.    Plaintiffs are informed and believe, and thereon allege, that as a direct and proximate result of Defendants' wrongful conduct as described above, Defendants have gained revenue and profits.

82.    Plaintiffs have no adequate remedy at law for the injury that will be caused by Defendants' acts of unfair competition.  Accordingly, Plaintiffs are entitled to preliminary and permanent injunctions restraining Defendants, their officers, agents, and employees, and all persons acting in concert with them, from further engaging in acts of unfair competition against the Brand and its products.

83.    Plaintiffs are informed and believe, and thereon allege, that Defendants committed the foregoing acts with the intention of depriving Plaintiffs of their legal rights, with oppression, fraud, and/or malice, and in conscious disregard of Plaintiffs' (and/or their assignors') rights.  Plaintiffs are, therefore, entitled to an award of exemplary damages, according to proof.

## FIFTH CLAIM FOR RELIEF
### (YYGM Against Defendants for
### Contributory Trademark Infringement and Counterfeiting)

84.    YYGM re-allege and incorporates herein by reference each and every allegation set forth above.

85.    Defendants have been, and continue to be, aware of and contributing to the infringement of the Trademarks and the use of counterfeit Brandy Melville products on their site. The infringing and counterfeit products are prominently displayed and promoted on Defendants' website.  Defendants' website is configured so that a search for "Brandy Melville," "Chill Since," or "Radio Silence" or similar searches will lead directly to the infringing and counterfeit goods.  Defendants facilitate the financial transactions, advertise and promote the products purportedly sold by the marketplace sellers, and provide shipping for the products.  On information and belief, Defendants control which products can be listed and prevent infringing products from being taken down.

86.    Alternatively, Defendants have remained willfully blind to the infringement and/or counterfeiting of the Trademarks on their website and App and on the products they promote and distribute to the end consumer.

87.    YYGM has been damaged by and Defendants have profited from the contributory trademark infringement and counterfeiting.

88.    To remedy Defendants' contributory trademark infringement, YYGM is entitled to all of the remedies set forth above for direct trademark infringement, counterfeiting, false designation of origin, and unfair competition.

### SIXTH CLAIM FOR RELIEF
### (Bastiat Against Defendants for Contributory
### Copyright Infringement and Counterfeiting)

89.    Bastiat re-alleges and incorporates herein by reference each and every allegation set forth above.

90.    Defendants, and each of them, have been, and continues to be, aware of and contributing to the infringement of the Copyright on its site.  The Copyright is prominently displayed and promoted on Defendants' Website.  Defendants' website is configured so that a

search for "Brandy Melville" or similar searches will lead to the infringing and counterfeit goods.  Defendants facilitate the financial transactions, advertise and promote the products purportedly sold by the marketplace sellers, and provide shipping for the products.  On information and belief, Defendants control which products can be listed and prevent infringing products from being taken down.

91.    Alternatively, Defendants have remained willfully blind to the infringement of the Copyright on its website and on the products it markets, sells, and distributes to the end consumer.

92.    Bastiat has been damaged by and Defendants have profited from Defendants' contributory copyright infringement.

93.    To remedy Defendants' contributory copyright infringement, Bastiat is entitled to all of the remedies set forth above for direct copyright infringement.

### SEVENTH CLAIM FOR RELIEF
**(YYGM Against Defendants for
Vicarious Trademark Infringement and Counterfeiting)**

94.    YYGM re-alleges and incorporates herein by reference each and every allegation set forth above.

95.    Defendants and the sellers who participate in the Temu marketplace and sell the infringing designs are in an apparent or actual partnership, have the authority to bind one another in transactions with third parties, and/or exercise joint ownership or control over the infringing products.  Defendants are thus vicariously liable for the trademark infringement and counterfeiting of the sellers who design and upload the infringing designs onto the Defendants' website.

96.    Brandy Melville has been damaged by and Defendants have profited from Defendants' vicarious trademark infringement and counterfeiting.

97.     To remedy Defendants' vicarious trademark infringement and counterfeiting, YYGM is entitled to all of the remedies set forth above for direct trademark infringement, counterfeiting, false designation of origin, and unfair competition.

**EIGHTH CLAIM FOR RELIEF**
**(Bastiat Against Defendants for**
**Vicarious Copyright Infringement and Counterfeiting)**

98.     Bastiat re-alleges and incorporates herein by reference each and every allegation set forth above.

99.     Defendants enjoy a direct financial benefit from the copyright infringement on their website and App.  Defendants get paid a percentage of every sale of every product displayed on the site.  The availability of the infringing goods also draws customers to the site, which causes Defendants to make money both through the sale of the infringing goods and through the sale of all goods displayed on its site.

100.    Defendants have the legal right to stop or limit the copyright infringement on its website and the practical ability to do so.  Defendants have the ability and means to monitor its site for infringing designs and the right to remove them.

101.    Bastiat has been damaged by and Defendants have profited from their vicarious copyright infringement.  To remedy Defendants' vicarious copyright infringement, Bastiat is entitled to all of the remedies set forth above for direct copyright infringement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief against Defendants as follows:

1.      For preliminary and permanent injunctions enjoining and restraining Defendants, their agents, employees, representatives, partners, joint venturers and/or anyone acting on behalf of, or in concert with, Defendants, from:

        A.      designing, manufacturing, importing, shipping, delivering, selling,

marketing, displaying, advertising or promoting any product that incorporates designs substantially similar to the Copyright and Trademarks;

        B.      representing or implying, directly or indirectly, to retailers, customers, distributors, licensees, or any other customers or potential customers of Defendants' products that Defendants' products originate with, are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with Brandy Melville;

2.      For an order requiring the destruction of all of Defendants' infringing products and all marketing, advertising, or promotional materials depicting Defendants' infringing products;

3.      For an accounting of all profits obtained by Defendants from sales of the infringing products and an order that Defendants hold all such profits in a constructive trust for the benefit of Plaintiffs;

4.      For an award to Plaintiffs of all profits earned by Defendants from the sale of the infringing products or their false designation of origin and unfair competition;

5.      For compensatory damages of no less than $1 million and according to proof;

6.      For prejudgment interest on all damages awarded by this Court;

7.      For reasonable attorneys' fees and costs of suit incurred herein; and

8.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable.

Respectfully submitted,

Dated: July 21, 2025

**ELLIS GEORGE LLP**

By:  s/Nicholas S. Pradaxay
     Nicholas S. Pradaxay
     Edward T. Hagan
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone:  (212) 413-2600
Facsimile:  (212) 413-2629
npradaxay@ellisgeorge.com
ehagan@ellisgeorge.com

**ELLIS GEORGE LLP**
Keith J. Wesley (*Pro hac vice forthcoming*)
Lori S. Brody (*Pro hac vice forthcoming*)
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:  (310 275-5697
kwesley@ellisgeorge.com
lbrody@ellisgeorge.com

*Attorneys for Plaintiffs Bastiat USA, Inc.
and Y.Y.G.M. SA*

2549922

25

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

The undersigned hereby certifies that the matter in controversy is not the subject of any

other action pending in any court, of any pending arbitration or administrative proceeding.

Dated: July 21, 2025                                   **ELLIS GEORGE LLP**


By:    s/Nicholas S. Pradaxay
         Nicholas S. Pradaxay
         Edward T. Hagan
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone:  (212) 413-2600
Facsimile:  (212) 413-2629
npradaxay@ellisgeorge.com
ehagan@ellisgeorge.com

**ELLIS GEORGE LLP**
Keith J. Wesley (*Pro hac vice forthcoming*)
Lori S. Brody (*Pro hac vice forthcoming*)
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:  (310) 275-5697
kwesley@ellisgeorge.com
lbrody@ellisgeorge.com

*Attorneys for Plaintiffs Bastiat USA, Inc.
and Y.Y.G.M. SA*

2549922